**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roosevelt PARRIETT, Defendant–
Appellant.**

**No. 92–5030.**

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1992.

Decided Sept. 4, 1992.

C. Winston Gilchrist, Asst. Federal Public Defender, Raleigh, N.C., argued, for defendant, appellant.

John Thomas Peterson, Sp. Asst. U.S. Atty., Office of the Staff Judge Advocate, Camp Lejeune, N.C., argued (Margaret Person Currin, U.S. Atty., Raleigh, N.C., Robert E. Breckenridge, II, Sp. Asst. U.S. Atty., Office of the Staff Judge Advocate, on the brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and WIDENER and HAMILTON, Circuit Judges.

## OPINION

ERVIN, Chief Judge:

Roosevelt Parriett had his supervised release revoked for failing to pay restitution, testing positive for drug use, failing to submit monthly supervision reports, and failing to notify the probation office of a change in residence. Parriett contends that an amendment to the supervised release statute, requiring a mandatory term of imprisonment for certain violations of the conditions of supervised release, constituted an impermissible *ex post facto* law as applied to him. Parriett also argues that evidence of drug "use" is insufficient as a matter of law to establish drug "possession" as contemplated by the supervised release statute. Finally, Parriett challenges the authority of the district court to impose a new term of supervised release in addition to revoking his initial term of supervised release. We vacate Parriett's sentence and remand for resentencing.

### I.

On May 30, 1989, Parriett pled guilty to a three count criminal information alleging that on or about August 4, August 11, and August 28, 1988, Parriett took the personal property of another without consent, in violation of 18 U.S.C. § 661, while on the grounds of the United States Marine Corps Air Station in New River, North Carolina. Parriett had been employed as a house painter by a contractor on the air base and had stolen various pieces of jewelry from

the houses he had been assigned to paint. Parriett was sentenced to nine months in custody, to be followed by thirty six months of supervised release. Parriett's supervised release included the conditions that, *inter alia*, he . pay restitution of $2,722 in monthly installments of $100 and submit to drug testing as deemed necessary by his supervising probation officer.

Parriett began his period of supervised release on May 24, 1990. On March 29, 1991, the United States Probation Office made a motion in the district court for an order revoking Parriett's supervised release, alleging that Parriett had 1) failed to pay restitution (having made only one $100 payment), 2) tested positive for drug use (positive for cocaine on two occasions and for cocaine and marijuana on another occasion), 3) failed to submit monthly supervision reports, and 4) failed to notify the probation office of a change in residence. Parriett admitted all allegations except the drug use. The district court found factual support for all allegations including the drug use and, pursuant to 18 U.S.C. § 3583(g), revoked Parriett's supervised release and sentenced him to an additional one year of imprisonment followed by 26 months of supervised release. Parriett appeals.

## II.

■ Parriett's first contention is that application to him of a recent revision to the statute governing revocation of a defendant's supervised release violated the constitutional prohibition against *ex post facto* laws. A new provision to the statute governing supervised release became effective December 31, 1988, providing that:

> If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release.

18 U.S.C. § 3583(g). Parriett contends that the district court's application of this provision to him constituted an *ex post facto* law

since it became effective after he committed his criminal offenses, and it disadvantaged his legal position by constraining the district court's discretion not to impose a prison sentence.

The *ex post facto* clause [1] forbids Congress "to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356 (1867)). To fall within the *ex post facto* prohibition, a law must 1) be retrospective, that is "it must apply to events occurring before its enactment;" and 2) it must "disadvantage the offender affected by it." *Id.* 450 U.S. at 29, 101 S.Ct. at 964 (footnotes omitted).

In this case, there is no question that the revision to the supervised release statute disadvantaged Parriett. The Government's argument that Parriett suffered no disadvantage because the district court would have been free to impose the same sentence in the absence of the mandatory imprisonment clause has been directly rejected by the Supreme Court. *See Lindsey v. Washington,* 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937) (when statute providing for maximum sentence of 15 years was amended to require maximum sentence to be imposed in all cases, "[i]t is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a [lesser] sentence").

■ Whether or not the revision to the supervised release statute was retrospective is a more problematic question. The sequence of events is critical to this issue. Parriett committed his offenses in August 1988. The statutory revision became applicable in December 1988. Parriett pled guilty in May 1989, and was sentenced in September 1989. The Government takes the position that the retrospective nature of the statute should be judged from the time of sentencing, rather than the time of

**1.** U.S. Const., art. 1, § 9, cl. 3 ("No ... ex post   facto Law shall be passed.").

the offense. This position is unsupported by the case law, and the cases relied upon by the Government have no connection with *ex post facto* concerns. *E.g., United States v. Alli,* 929 F.2d 995, 998 (4th Cir. 1991) (holding, based on the relevant statutory language, that upon revocation of probation defendant must be sentenced in accordance with law at the time of his initial sentencing). Instead, cases dealing with the *ex post facto* clause are clear that whether a statute is retrospective is measured from the time of the conduct which forms the basis of the criminal charge. *See, e.g., Weaver,* 450 U.S. at 30, 101 S.Ct. at 965 (*ex post facto* violation occurs "when the legislature increases punishment beyond what was prescribed *when the crime was consummated*") (emphasis added).

A better argument against a finding that the statutory revision is retrospective is that the revocation of Parriett's supervised release was not ordered as punishment for his initial crimes, but instead, as punishment for his possession of drugs during the term of his supervised release. Under this interpretation, there could be no claim that the statute operated retrospectively because Parriett engaged in the drug possession long after the effective date of the revision of the statute. The Supreme Court has stated that a law raises *ex post facto* concerns only "if it changes the legal consequences of acts completed before its effective date." *Id.* at 31, 101 S.Ct. at 965. Clearly, the revision to the supervised release statute most directly altered the "legal consequences" of Parriett's drug possession. Only in a more tenuous sense can it be said that revision of the supervised release statute changed the legal consequences of Parriett's original crime, making the punishment for that crime more severe by constraining the district court's discretion to overlook any ensuing controlled substance violations committed by the defendant while on supervised release. Nevertheless, under the prior precedent of this circuit, we must hold that the revision of the supervised release statute altered

the legal consequences of Parriett's original crime, and therefore that the amendment cannot be applied to Parriett without violating the *ex post facto* clause.

In *Fender v. Thompson,* 883 F.2d 303 (4th Cir.1989), this court was faced with an *ex post facto* argument in relation to a Virginia statute that provided that "[a]ny person sentenced to life imprisonment who escapes from a correctional facility or from any person in charge of his custody shall not be eligible for parole." Va.Code § 53.1–151(B) (1988). In *Fender,* an inmate had been convicted and sentenced to life imprisonment in 1973, with the possibility of parole in 15 years. The parole statute was revised to include the above-quoted language in 1985. The inmate escaped and was recaptured in 1987, and subsequently the Virginia Department of Corrections issued an order indicating that, pursuant to the parole statute revision, the inmate was no longer eligible for parole. On appeal of the denial of the inmate's habeas corpus petition, this court held that application of the parole statute revision to the inmate violated the *ex post facto* clause. The *Fender* opinion expressly rejected the argument that the revision to the parole statute should be viewed as imposing punishment for the inmate's attempted escape, not as imposing additional punishment for his original crime. The court acknowledged that the Virginia legislature was free to alter the punishment for attempted escape, but not in a manner that "took the form of a *post hoc* alteration of the punishment for an earlier offense." *Id.* at 306–07. The court found that the revocation of parole eligibility constituted such a *post hoc* alteration. *Id.* The fact that the inmate was "on notice" of the legal consequences of an attempted escape was dismissed by the *Fender* court as irrelevant to the analysis. *Id.* at 307 (citing *Schwartz v. Muncy,* 834 F.2d 396 (4th Cir.1987)).

▮ The principles established by *Fender* are directly applicable to the present case.[2] Thus, we hold that while Congress

---

2. We can find no persuasive reason to distinguish between the standards of parole eligibility, dealt with in *Fender,* and the conditions for

revocation of supervised release, at issue in the present case. The former provisions dictate the circumstances upon which an inmate may be

is free to alter the punishment for possession of controlled substances, it cannot accomplish its goal by means of a *"post hoc* alteration of the punishment for an earlier offense." *Id.,* at 306–07. The fact that Parriett was "on notice" of the consequences of drug possession during the term of his supervised release does not serve to insulate the statutory revision from review under the *ex post facto* clause.

We find that section 3583(g), as applied to Parriett, meets both criteria for an *ex post facto* law: the statute operates retrospectively and to Parriett's disadvantage. As a result, we hold that the amendment to the supervised release statute may not constitutionally be applied to Parriett. The case must be remanded to the district court to allow the court to determine the consequences of Parriett's supervised release violations with the understanding that section 3583(g) is inapplicable to him.[3]

### III.

 In addition to revoking Parriett's supervised release and ordering a term of imprisonment of one year, the district court ordered an additional term of supervised release of twenty-six months, commencing at the termination of Parriett's prison term.

Under the terms of the supervised release statute, the sentencing court may:

(1) terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release ...;

(2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release ...;

(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised

release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release ...; *or*

(4) order the person to remain at his place of residence during nonworking hours....

18 U.S.C. § 3583(e) (emphasis added). Parriett contends that because the subsections of this provision are joined with the word "or," the district court is compelled to select one and only one of the listed options. Since the district court elected to revoke Parriett's supervised release under subsection (3), Parriett argues the court lacked authority to also extend or modify the term of release as outlined in subsection (2).

Subsequent to the submission of briefs in this case, this court decided *United States v. Cooper,* 962 F.2d 339 (4th Cir.1992), and adopted the precise position propounded by Parriett. As presently written, section 3583(e) only allows the sentencing court to extend a term of supervised release or revoke it, not both. *Id.* at 341–42.

### IV.

For the above-stated reasons, we vacate the order of the district court and remand the case to that court with instructions that: 1) section 3583(g) is inapplicable to Parriett pursuant to the *ex post facto* clause of the Constitution; and 2) the district court does not have authority under section 3583(e) to both revoke Parriett's supervised release and to impose a new term of supervised release to be served after the resulting term of imprisonment.

**VACATED AND REMANDED WITH INSTRUCTIONS.**

---

released from imprisonment; the latter provisions control when a former inmate may be returned to imprisonment. We find both sets of laws to be equally important in contributing to the severity of a defendant's initial sentence.

**3.** Our holding that application to Parriett of section 3583(g) is prohibited by the *ex post facto* clause moots Parriett's second argument that the "possession" of drugs as required under section 3583(g) cannot be shown by mere evidence of drug "use" as proven by urinalysis. Accordingly, we reserve ruling on this issue.