35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kalani ENTENDENCIA, aka Kalani P. Kaaikala, Defendant-Appellant.
 No. 93-30367.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 2, 1994.*
Decided Aug. 31, 1994.
 
 Before: WRIGHT, KOZINSKI, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Kalani Entendencia was prosecuted for bank fraud and pled guilty. See 18 U.S.C. Sec. 1344. He was duly sentenced for that crime. It happened that he committed that offense while he was on supervised release, and the district court determined that his new offense had violated the conditions of his supervised release. He was duly sentenced for that violation. He claims that his double jeopardy rights were violated because he incurred two punishments for the same act. We affirm.
 
 BACKGROUND
 
 3
 In 1991, Entendencia was convicted of bank fraud and was sentenced to 30 months imprisonment plus a supervised release period of three years. One condition of his supervised release was that he "shall not commit another ... crime...." He served his prison term and was duly released. Alas, he had learned very little. Within two months he had again committed a bank fraud. He was prosecuted for his new crime and pled guilty to it. At the same time a petition was filed which alleged that he had violated the "no crime" condition of his supervised release. He admitted that he had violated it.
 
 
 4
 The district court then sentenced Entendencia to 37 months imprisonment for his new crime. It also revoked his supervised release and sentenced him to 18 months imprisonment for his violation. The latter term was to run consecutively to the former which gave him a total of 55 months imprisonment. That, he says, violated his double jeopardy rights.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 5
 The district court had jurisdiction under 18 U.S.C. Secs. 3231. We have jurisdiction pursuant to 28 U.S.C. 1291. The double jeopardy issue raised by Entendencia is a question of law that we review de novo. See United States v. Horodner, 993 F.2d 191, 193 (9th Cir.1993).
 
 DISCUSSION
 
 6
 The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. As the Supreme Court has explained, the clause "applies both to successive punishments and to successive prosecutions for the same criminal offense." United States v. Dixon, --- U.S. ----, ----, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). When it is claimed that two separate proceedings run afoul of the Double Jeopardy Clause, the Court has applied the same elements test and has declared that "where the two offenses for which the defendant is punished or tried cannot survive [that test], the double jeopardy bar applies." Id. at ----, 113 S.Ct. at 2856. That means that if the government seeks to use two separate proceedings to inflict two punishments upon a person for the same act, it may not do so if there is but one offense. "[T]he test to be applied to determine whether there are two offenses or only one[ ] is whether each ... requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Entendencia seeks to put much weight on the argument that the Blockburger test cannot be met in this case since it cannot be said that both his supervised release violation and his crime have elements independent of each other. However, we need not decide that question because, as we will show, when Entendencia's supervised release was revoked he was not being punished for his new crime. In other words, his attack never reaches the same elements citadel because it never gets beyond the punishment outworks.
 
 
 7
 Simply put, supervised release revocation is not punishment for the new acts that bring it about. The Supreme Court has pointed out that parole is designed to "help individuals reintegrate into society as constructive individuals as soon as they are able...." Morrissey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972). Because of its remedial purpose, individuals on parole are subjected to conditions designed to benefit and guide them and to protect society. See id. at 478, 92 S.Ct. at 2599. As a result, "revocation of parole is not part of a criminal prosecution...." Id. at 480, 92 S.Ct. at 2600. Far from it. As we said in Standlee v. Rhay, 557 F.2d 1303, 1306 (9th Cir.1977) (citations omitted):
 
 
 8
 Revocation of parole is remedial rather than punitive, since it seeks to protect the welfare of parolees and the safety of society. The termination of parole results in a deprivation of liberty and thus is a grievous loss to the parolee. But the harshness of parole revocation does not alter its remedial nature.
 
 
 9
 It is for that reason that the Second Circuit has said that jeopardy does not even attach at parole revocation hearings. See United States v. Grisanti, 4 F.3d 173, 176 (2d Cir.1993). For the same reason, the Seventh Circuit has held that a person can be prosecuted for a criminal offense, even if the same conduct formed the basis of a parole revocation. See United States v. Hanahan 798 F.2d 187, 189 (7th Cir.1986). And we have held that parole can be revoked for a defendant's acts, even though he was previously acquitted in a criminal prosecution for those very acts. Standlee, 557 F.2d at 1307.
 
 
 10
 It is true that we deal here with revocation of supervised release rather than with revocation of parole, but that is a distinction without a difference. We need not add to our discussion in United States v. Paskow, 11 F.3d 873, 881 (9th Cir.1993) (footnote omitted), where we said:
 
 
 11
 Supervised release and parole are virtually identical systems. Under each, a defendant serves a portion of a sentence in prison and a portion under supervision outside prison walls. If a defendant violates the terms of his release, he may be incarcerated once more under the terms of his original sentence. More specifically, a defendant's original sentence determines the length of the term of parole (indirectly) or supervised release (directly). It is also the original sentence that established how long the defendant may be required to serve following revocation in the case of both parole and supervised release violations. Finally, it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms of both parole and supervised release.
 
 
 12
 Revocation of parole is not a punishment for a new offense, although the conduct on which revocation is based may be punished separately. For revocation purposes, the conduct simply triggers the execution of the conditions of the original sentence. Those conditions may not be made more severe, nor may the defendant's term of reincarceration after his violation be made more onerous, by any act adopted after he was sentenced. In this respect, there is no conceivable basis for distinguishing between parole and supervised release.
 
 
 13
 Entendencia, however, relies heavily on our decision in United States v. Schram, 9 F.3d 741 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993), where we said that a supervised release violation should be treated as separate from the offense for which it was imposed. That was for purposes of selecting a Guidelines manual in order to decide whether a supervised release sanction should run consecutively to a sentence for a new offense. Id. at 743. But it is important to understand the limitation which we have underlined. As we said in Paskow, our decision in Schram is so limited. 11 F.3d at 882-83 n. 12. By the way, it is interesting to note that Schram relied upon the Second Circuit case of United States v. Bermudez, 974 F.2d 12, 13-14 (2d Cir.1992) (per curiam). That circuit has now explained that Bermudez is similarly limited. United States v. Meeks, No. 93-1708, slip op. 4441, 4456-57 (2d Cir. June 2, 1994).
 
 
 14
 That supervised release revocation remains in the same remedial camp as parole violations is further supported by the Sentencing Commission's statement that supervised release is simply "a new form of post-imprisonment supervision...." United States Sentencing Commission, Guidelines Manual, Ch. 7, Pt. A, intro. comment. p 2(b) (Nov. 1992). The new form was necessitated by what Congress saw as honesty in sentencing, or what might be called real time sentencing. What you get at sentencing is what you serve. Once Congress made that decision, the function previously served by parole had to be taken over by something else. That something else was supervised release. That does not mean that the purpose changed or that violations of supervised release became any less remedial. In fact, the Commission looks upon a violation of supervised release as a "breach of trust." U.S.S.G. Ch. 7, Pt. A, intro. comment. p 3(b) (Nov. 1992). Similarly, the Second Circuit, agreeing with Paskow, has said that "supervised release, like parole, is an integral part of the punishment for the underlying offense." Meeks, slip op. at 4452. See also United States v. Clark, 984 F.2d 319, 320-21 (9th Cir.1993) (per curiam) (no double jeopardy problem where an act leads to violation of supervised release in one case and violation of parole in another); United States v. Flora, 810 F.Supp. 841, 843 (W.D.Ky.1993) (supervised release revocation is consequence of underlying crimes).
 
 
 15
 The fact that the supervised release proceeding and sanction is remedial also distinguishes this case from those in which the Supreme Court has found double jeopardy problems even though the proceedings at issue were nominally civil in nature. An important key to those cases can be found in the Court's statement that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." United States v. Halper, 490 U.S. 435, 448, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). As we have already pointed out, supervised release and its proceedings are remedial in nature. But how, one might ask, can the mere civil forfeiture in Halper be considered to have retributive or deterrent purposes while locking a person up for months is considered remedial?
 
 
 16
 The answer is one of focus. Supervised release looks backwards, and when violation of its conditions is sanctioned it is because of the underlying crime to which it is attached. The forfeiture in Halper looked forward. It was a punishment for the offense at hand. In other words, Halper committed a single offense, and for that offense he was subjected to both an overtly criminal punishment and a civil forfeiture. The same thing happened in Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), where the court found an Eighth Amendment violation.
 
 
 17
 Of the even more recent Dixon case, the same can be said. There the government sought to punish conduct as crimes when the same conduct had already been punished as criminal contempts. --- U.S. ----, 113 S.Ct. at 2853-55. And the still fresher case of Department of Revenue of Montana v. Kurth Ranch, --- U.S. ----, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), is not different. In that case, the state sought to exact both an overtly criminal punishment and a tax punishment as a sanction for the same criminal conduct. Id. at ----, 114 S.Ct. at 1944-48. Finally, if we look at the considerably older juvenile case to which Entendencia invites our attention, we discover that the same concerns were present. In that case, there was an attempt to prosecute a person as an adult for the same act that had already caused him to be punished as a juvenile. Breed v. Jones, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975).
 
 
 18
 However, for purposes of supervised release, the new criminal act is not punished at all. That act merely shows that the defendant needs to finish expiating the prior offense. The remedial effects of supervised release revocation assure that he will do so.
 
 CONCLUSION
 
 19
 Entendencia asks us to hold that under the supervised release regime he cannot be sanctioned for violating his conditions of release by committing a new crime and also be punished for that new crime itself. He asks in vain.
 
 
 20
 The substitution of supervised release for the old parole system has not changed the longstanding nature of post-incarceration release conditions into something wholly new. Like parole, supervised release looks to and is a sanction for the original offense. Sanctions for violation of its conditions remain remedial. When a person who is subject to a "no crime" condition commits a crime, he becomes Janus-like. He looks forward to punishment for his new crime and backward to punishment for his old one.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3