**Denrick Eric BROWN, # 127096,
Petitioner,**

v.

**VIRGINIA DEPARTMENT OF
CORRECTIONS, et al.,
Respondents.**

**Civ. A. No. 93–346–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 25, 1995.

Petitioner, pro se.

James S. Gilmore, III, Atty. Gen., Pamela Sargent, Asst. Atty. Gen., Richmond, VA, for respondents.

## MEMORANDUM OPINION

HILTON, District Judge.

Petitioner Denrick Eric Brown filed this 28 U.S.C. § 2254 petition for a writ of habeas corpus, challenging the computation of his release date. Respondents filed a Motion for Summary Judgment seeking denial of the writ. The Court afforded petitioner an opportunity to respond to the motion and he has done so.

Petitioner has a lengthy criminal history. He was received by the Virginia Department of Corrections (VDOC) on December 17, 1981 pursuant to a grand larceny conviction and a two year, six month sentence entered by the Circuit Court of the City of Norfolk.

His second and third convictions occurred on March 2, 1982. He received two sentences of two years, six months from the Circuit Court of the City of Newport News for burglary and grand larceny. He was paroled on December 15, 1983.

Petitioner was arrested for violating the conditions of his parole on January 23, 1984.

At that time, he had 4 years, 4 months and 4 days to serve on his previous convictions. Petitioner's parole was revoked on May 29, 1984.

On April 9, 1984, petitioner received his fourth and fifth convictions and was sentenced by the Circuit Court of the City of Petersburg to 12 years, with 7 years suspended, for burglary and to 5 years, with 4 years suspended for grand larceny. Petitioner was paroled a second time on March 18, 1987.

Petitioner was arrested for parole violations on July 30, 1987. He then had 4 years, 8 months and 3 days left to serve from the parole of his previous five convictions. His parole was revoked on August 31, 1988.

On January 27, 1988, petitioner received his sixth and seventh convictions and was sentenced by the Circuit Court of the City of Hampton to 15 years for robbery and two years for the use of a firearm in the commission of a felony.

On May 19, 1988, he was sentenced for his eighth conviction by the Circuit Court of the County of Chesterfield to 5 years for robbery. On June 14, 1988, petitioner was sentenced for his ninth conviction by the Circuit Court of the County of Henrico to 9 years for robbery. On July 6, 1988, he was sentenced for his tenth conviction by the Circuit Court of the County of Henrico to 7 years and 6 months for robbery. On July 19, 1988, the same court sentenced petitioner for his eleventh (and last) conviction to 20 years, with 15 years suspended, for robbery.

### I.

■ Petitioner first alleged that VDOC miscalculated his "total sentence." He argued that his "total sentence" should be 43 years, 6 months (the sum of his six most recent sentences) plus the time left to be served from his parole revocation. This argument stems from a misunderstanding of VDOC's definition of "total sentence." Petitioner's "total sentence" is the sum of the time he received for each of his eleven sentences. That number does not take into account time served or otherwise discharged through earned good conduct time. Nor does the "total sentence" indicate the time petitioner must serve before his mandatory release date.

The total time petitioner must serve before he is eligible for mandatory parole is the time he had left to serve on his first five sentences (4 years, 8 months, 3 days) plus the time for his last six convictions (43 years, 6 months). Accordingly, this claim must fail.

### II.

Petitioner next claimed that VDOC deprived him of some good time credit. Prisoners begin to earn credit towards their sentences as soon as they are arrested and continue to earn credit for every day they spend in jail. They also earn 15 days of jail good time for every 30 days they serve as long as they comply with the jail's rules and regulations.[1]

Once convicted and committed to VDOC, an inmate is classified under the Good Conduct Allowance (GCA) system. Depending on the classification, an inmate may earn either 0, 15, 20, or 30 days of good time for every 30 days served. For example, a GCA Class II inmate earns 20 days of good time for every 30 days served. This enables an inmate to serve only sixty percent of his sentence before becoming eligible for release.[2] One-half of the good time earned goes towards an inmate's anticipated discretionary parole release date, if he has one, and all of the good time goes toward his mandatory parole release date. An inmate who reenters VDOC due to a parole violation cannot be classified under the GCA system until his parole has been revoked.

The facts show that VDOC credited petitioner with 68 days of jail credit from June 7, 1981 to July 2, 1981 and from November 4,

---

1. In addition, jail inmates may earn exemplary good time at the rate of 5 days per month, and judicial good time as specified by the court. But, once they are classified into the VDOC, they may no longer earn exemplary good time.

2. For example, an inmate sentenced to serve 100 days and classified as GCA Class II must only serve 60 days before completing his sentence, i.e., 60 days served plus 40 days credited good conduct allowance.

1981 to December 17, 1981. Petitioner also received jail credit from January 29, 1988 until admitted to VDOC on July 29, 1988. Petitioner's parole was revoked for the first time on May 29, 1984 and for the second time on August 31, 1988. After each revocation, VDOC classified petitioner as a Class II inmate and he earned 20 days of good conduct time for every 30 days he served.

■ It appears from the file that respondents have credited petitioner with the appropriate amount of good time. Moreover, assuming petitioner maintains Class II status, as he has for the majority of his incarceration, the Court finds that VDOC has calculated petitioner's mandatory release date correctly.[3]

### III.

Petitioner next advanced three arguments regarding his parole eligibility. First, he argued that respondents misapplied a Virginia statute that made him ineligible for parole. "The parole eligibility statute in effect on the date of the offenses for which the felon is convicted is the statute that controls the convict's eligibility for parole." *Vaughan v. Murray*, 247 Va. 194, 441 S.E.2d 24, 25 (1994). The Virginia statute in effect when petitioner committed the offenses, § 53.1–151(B)(1), provided that[4]:

[a]ny person convicted of three separate felony offenses of (i) murder, (ii) rape, or (iii) robbery by the presenting of firearms or other deadly weapon, or any combination of the offenses specified in subdivision (i), (ii), or (iii), when such offenses were not

part of a common act, transaction or scheme shall not be eligible for parole.

■ As noted *infra*, petitioner was convicted of five separate robbery offenses in 1988 and one weapon charge.[5] His convictions covered three jurisdictions and each involved the use of a weapon. Thus, VDOC properly indicated to petitioner that he was ineligible for parole for his last five convictions.

■ Petitioner next argued that VDOC should allow him to serve his mandatory sentences without parole first, then the time left from his parole revocation last, thus, making him eligible for parole at the end of his prison term. This argument is frivolous. It is VDOC policy to have all inmates serve their sentences in the order in which they are received. Moreover, VDOC applies this "first in time" policy to all inmates. Courts grant prison officials great discretion to determine an inmate's parole. *See Vaughan v. Murray*, 872 F.Supp. 268 (E.D.Va.1994). And, importantly, the Constitution does not require a state to allow an inmate to serve his sentences in the order of his preference as opposed to established policy.

Last, petitioner argued that § 53.1–151(B) violated the *ex post facto* clause of the Constitution because it effectively abrogated his right to parole consideration for the time he has left to serve on the convictions from which he was granted parole.

■ The *ex post facto* clause forbids the enactment of a law that increases the punishment for an accomplished act.[6] *U.S. v. Par-*

---

**3.** After petitioner's parole was revoked for the second time, he had 4 years, 2 months and 3 days left to serve on previous convictions. Then, he received an additional sentence of 43 years, six months, thus petitioner had to serve 48 years, 2 months, and 3 days or 17,583 days. If petitioner maintains Class II status, he must serve only 60 percent of this, or 10,549 days, or 28.9 years. Since petitioner was sentenced in 1988, 28 years from now is 2016, which is the year given for petitioner's anticipated mandatory parole release date. These calculations strongly indicate that petitioner's mandatory release date is calculated correctly.

**4.** Petitioner was arrested for parole violations in January of 1988 and convicted of six additional offenses in 1988. While it is unclear whether

petitioner committed the offenses in 1987 or 1988, the Virginia statute in question was substantively unchanged for those years.

**5.** Section 53.1–151(B) does not require a conviction of armed robbery. It requires only that the petitioner use a firearm or deadly weapon during the commission of the offense.

**6.** The *ex post facto* clause also forbids the enactment of a law that delays an inmate's eligibility for parole. *See Roller v. Cavanaugh*, 984 F.2d 120 (4th Cir.), *cert. granted*, — U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635, *cert. dismissed* as improvidently granted, — U.S. ——, 114 S.Ct. 593, 126 L.Ed.2d 409 (1993). Here, petitioner's eligibility for parole is not delayed. In fact, petitioner sought to postpone his parole eligibility until he served his sentences without parole.

*riett,* 974 F.2d 523, 525 (4th Cir.1992). "To fall within the *ex post facto* prohibition, a law must 1) be retrospective, that is 'it must apply to events occurring before its enactment;' and 2) it must 'disadvantage the offender affected by it.'" *Id.* (quoting *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). Clearly, petitioner is disadvantaged by operation of the recidivist statute: application of § 53.1–151(B) to him made his right to parole on his previous sentences meaningless. However, this additional punishment is not retrospective because the punishment does not stem from events occurring before the statute's enactment.

■ "[A] law raises *ex post facto* concerns only if 'it changes the legal consequences of acts completed before its effective date.'" *Parriett,* 974 F.2d at 526 (quoting *Weaver,* 450 U.S. at 31, 101 S.Ct. at 965); *Schwartz v. Muncy,* 834 F.2d 396, 397 (4th Cir.1987). Section 53.1–151(B) was enacted before petitioner committed the acts for which he is now incarcerated without parole. Petitioner was on notice that he would not be eligible for parole if convicted of three or more acts defined in the statute. Thus, § 53.1–151(B) does not violate the *ex post facto* clause as applied to petitioner.

■ Alternatively, the Court notes that petitioner has no constitutional right to be released before his sentences expire. *Adams v. Rice,* 40 F.3d 72 (4th Cir.1994); *Gaston v. Taylor,* 946 F.2d 340, 344 (4th Cir.1991); *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7–11, 99 S.Ct. 2100, 2103–06, 60 L.Ed.2d 668 (1979). If a state establishes a discretionary parole system, due process is satisfied by considering the inmate for parole in accordance with the laws of that state. *Gaston,* 946 F.2d at 344; *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). The Virginia parole statutes in effect when petitioner was convicted of his last six offenses provided that he is not entitled to parole. There is no statute or procedure that excepts the time remaining from sentences on which parole was revoked. Without an applicable statute or VDOC policy containing mandatory language, inmates do not have a constitutionally protected liberty interest in being considered for parole.

■ Moreover, considering petitioner for parole for time remaining on his first five sentences is irrational. If he is granted parole, he still must serve his mandatory sentences. Virginia presumes that the General Assembly did not intend that a statute's application lead to irrational consequences. *Vepco v. Citizens for Safe Power,* 222 Va. 866, 284 S.E.2d 613 (1981); *Parra v. Parra,* 1 Va.App. 118, 126, 336 S.E.2d 157, 161 (1985).

Based on the foregoing, the Court will grant respondents' motion and will dismiss this action.

An appropriate order shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, this action is hereby DISMISSED.

Should the petitioner wish to appeal, written notice of appeal must be filed with the Clerk of this Court within thirty (30) days of the date of this Order.

The Clerk is directed to send a copy of this Order and accompanying Memorandum Opinion to the petitioner and to counsel of record for respondents.