UNITED STATES of America

v.

Onious McGREGOR.

No. 86–433–01.

United States District Court,
E.D. Pennsylvania.

Oct. 19, 1994.

Paul Sarmousakis, Asst. U.S. Atty., Philadelphia, PA, for the U.S.

Mary McNeill Zell and Daniel M. Preminger, Defender Association of Philadelphia, Philadelphia, PA, for Onious McGregor.

## MEMORANDUM

DALZELL, District Judge.

I. Introduction

On October 16, 1986, a grand jury indicted defendant Onious McGregor on six counts of violating federal law. McGregor had re-entered the United States after deportation to Jamaica, and the counts of the indictment all related to McGregor's unlawful re-entry.

On November 24, 1986, McGregor pleaded guilty to Counts One, Three, and Four of the indictment. Count One charged a violation of 8 U.S.C. § 1326 (punishing unlawful re-entry by a deported alien), which at that time carried a maximum penalty of two years; Count Three charged a violation of 18 U.S.C. § 911 (punishing false claims of United States citizenship), which carried a maximum penalty of three years; and Count Four charged a violation of 18 U.S.C. § 1028(a)(4) (punishing knowing possession of identification documents with intent to defraud), which carried a maximum penalty of one year, *id.* § 1028(b)(3).

On January 14, 1987, Judge Hannum sentenced McGregor to one year of imprisonment on Count One, and three years on Count Three. The sentences ran consecutively. On Count Four, Judge Hannum suspended the sentence and placed McGregor on probation for five years, to run consecutively with the sentences and any resulting parole.

On June 21, 1994, the Upper Darby police arrested McGregor, who was still on probation, and charged him with violating state laws pertaining to the possession of controlled substances. On August 17, 1994, this Court[1] revoked McGregor's and re-sentenced him to serve two additional years in prison. We followed the command of 18 U.S.C. § 3565, which states:

> Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession of a controlled substance, thereby violating the condition imposed by section 3563(a)(3), the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence.

*Id.* § 3565.[2] Congress added this quoted language in 1988 as part of the Anti–Drug Abuse Act of 1988, and instructed the courts to apply it "to persons whose probation, supervised release, or parole begins after December 31, 1988". Pub.L. No. 100–690, § 7303(d), 1988 U.S.S.C.A.N. (102 Stat.) 4181, 4464. No one disputes that Mr. McGregor's probation began after this date.

On August 26, 1994, the United States moved for reconsideration of our Order resentencing McGregor. The Government urges that we erred in two respects. First, it argues that we erred by applying § 3565 in resentencing McGregor and should have resentenced him pursuant to the law in place before the enactment of the Sentencing Reform Act of 1984 ("SRA"), 9 Pub.L. No. 98–473, 1984 U.S.C.C.A.N. (98 Stat.) 1987. Second, the Government argues that we miscalculated the ceiling of McGregor's sentence. We conclude below that the Government is correct in its second conclusion. Therefore, we will vacate our prior Order and resentence McGregor to one year in prison.[3]

## II. Whether this Case Should Be Analyzed Under the Sentencing Reform Act

■ Inasmuch as McGregor did not begin his parole until after December 31, 1988 (the date on which the 1988 amendment to § 3565 took effect), it would appear that the plain language of § 3565 applies to him. *Cf. United States v. Ron Pair Enterprises,* 489 U.S. 235, 242–43, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of

---

1. The case was reassigned to us after Judge Hannum retired. We held a third round of hearings on McGregor's revocation of probation on August 17 and 19, 1994, having after hearing on March 29, 1993 modified the conditions of probation to include drug treatment, which McGregor thereupon ignored, leading to another hearing on April 5, 1994, which resulted in the imposition of ninety days' home confinement with electronic monitoring.

2. Section 3563 reads, in relevant part:
   (a) Mandatory conditions.—The court shall provide, as an explicit condition of a sentence of probation—
   . . . .
   (3) for a felony, ... that the defendant not possess illegal controlled substances.
   *Id.* § 3563(a)(3).

3. The Government filed its motion for reconsideration on August 26, 1994, just after McGregor filed his notice of appeal. Due to a procedural quirk, we received the Government's motion before we received McGregor's notice, although McGregor filed first. We believe that our consideration of the Government's motion falls within one of the exceptions to the rule of *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). The Third Circuit recently commented:

> There are grey areas surrounding the issues of appealability, prematurity of appeals, and the situs of jurisdiction during the period when a party is attempting to clarify rulings by either or both the district court and the appellate court.

*Bensalem Township v. Int'l Surplus Lines Ins. Co.,* 38 F.3d 1303, 1315 (3d Cir.1994). We feel comfortable ruling on the Government's motion for the following reasons: (1) both parties want us to consider the Government's motion, as evidenced by their joint motion to stay the briefing schedule filed in the Court of Appeals; (2) McGregor will benefit from our consideration of the Government's motion, insofar as we shall decrease his sentence as a result; and (3) the Court of Appeals will benefit by having this Memorandum Opinion, rather than merely our speaking Orders, for its review on appeal.

legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters.' ") (alteration in original) (citing *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570–72, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *United States v. Fisher,* 10 F.3d 115, 120 (3d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 2746, 129 L.Ed.2d 865 (1994). Yet if the predicate of § 3565 is the mandatory condition of § 3563(a)(3), then Judge Hannum could not have sentenced McGregor pursuant to it in January, 1987.[4] This is the Government's view. It argues § 3565 "can not be applied to pre-guidelines offenses and sentences, since § 3565 itself is only effective for offense committed on November 1, 1987 and thereafter." *Government's Motion for Reconsideration and Correction of Sentence* at 2–3. Under the Government's interpretation, then, the 1988 amendment would apply only to criminals who committed offenses after November 1, 1987 and who are placed on probation, supervised release, or parole after December 31, 1988.

The Government gives two reasons in support of its interpretation. First, the Government relies on the Supreme Court's decision last term in *United States v. Granderson,* — U.S. ——, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994), in which the Court defined "original sentence" in § 3565 to mean the sentencing range available under the SRA at the time of sentencing. Second, the Government takes the position that the application of the 1988 amendment to McGregor—whose offenses occurred before § 3565 took effect—would raise "*ex post facto* concerns". *See Government's Motion for Reconsideration and Correction of Sentence* at 3. We shall consider these arguments in turn.

### A. *United States v. Granderson*

In *United States v. Granderson, supra,* — U.S. at ——, 114 S.Ct. at 1263–68, the Supreme Court addressed the issue of the meaning of "original sentence" in § 3565. The district court had imposed a sentence of five years' probation upon Granderson for his conviction. When Granderson tested positive for cocaine use during the probation period, the district court revoked Granderson's probation and resentenced him to twenty months' imprisonment, the court interpreting the operative language of § 3565 to require it to incarcerate Granderson for at least one-third of the original sentence of probation, *i.e.,* one-third of sixty months. *Id.* at ——, 114 S.Ct. at 1262. The Supreme Court reversed the district court, and held that § 3565 required the district court to incarcerate Granderson for at least one-third of the minimum sentencing range under the SRA. *Id.* at ——, 114 S.Ct. at 1262–63. The Court noted that the district court's interpretation would lead to the anomalous result of Granderson serving longer after the revocation of his probation than he could have served if the judge had imposed the maximum sentence available under the SRA. *Id.* at ——, 114 S.Ct. at 1264–65.

We rehearse these facts to emphasize that *Granderson* addressed a different issue than the one we face today. The district court sentenced Granderson under the SRA, and no Justice argued that pre-SRA law should have applied to the case. The Supreme Court defined "original sentence" within the context of a SRA case; the Court did not foreclose the application of § 3565 to pre-SRA sentences. Nor did the Court eliminate the possibility that "original sentence" could have a different meaning in a pre-SRA case. We therefore disagree that *Granderson* binds us in this case.

There is an interpretation of § 3565 that is faithful both to *Granderson* and to the plain language of the statute. Again, the operative predicate of § 3565 requires revocation of probation "if a defendant is found by the court to be in possession of a controlled substance, thereby violating the condition imposed by section 3563(a)(3)". If Congress had amended § 3565 to read "if a defendant violates the condition imposed by section 3563(a)(3)," then the Government's position

---

**4.** In fact, the Judgment and Probation/Commitment Order of January 14, 1987, does mandate that McGregor "refrain from violation of any law (federal, state, and local)". *See United States v.*

*McGregor,* No. 86–0043–01 (E.D.Pa. Jan. 14, 1987) (Judgment and Probation/Commitment Order) (overleaf).

would be stronger. It did not, however. Instead, Congress used language that accommodates both pre-SRA sentences ("if a defendant is found by the court to be in possession of a controlled substance") and SRA sentences ("thereby violating the condition imposed by section 3563(a)(3)"). The term "original sentence" thus admits to two meanings, one for pre-SRA sentences (an issue unaddressed in *Granderson*) and one for SRA sentences (the issue resolved by *Granderson*).

Moreover, we should not be surprised that Congress amended § 3565 with language that applies both to pre-SRA and SRA cases. First, as the Government points out in its motion, Congress has repealed the relevant prior statute. 18 U.S.C. § 3651 (1982 & Supp. IV 1986) (repealed effective 1987). It is doubtful that Congress could—or would even try to—amend a dead letter. It would make more sense for Congress to amend the Sentencing Reform Act with language that encompasses both pre-SRA and SRA cases.[5]

Second, in 1988 Congress could hardly have been ignorant of the fact that then and in the immediate years ahead, most revocations of probation would necessarily be for pre-SRA cases, given the SRA's November 1, 1987 effective date. Its 1988 amendment, therefore, had to accommodate—and, we hold, did accommodate—the reality that it was addressing the old sentencing regime as well as the new one.

## B. *The Constitutionality of Applying § 3565 to McGregor*

■ The Government's second argument raises the constitutional question of whether application of § 3565 to McGregor raises *ex post facto* concerns. In essence, the Government argues that our interpretation of § 3565 might be unconstitutional, and under familiar canons of statutory construction we should avoid the unconstitutional interpretation of a statute if we can. *See, e.g., Nat'l Labor Relations Bd. v. Catholic Bishop*, 440 U.S. 490, 500, 99 S.Ct. 1313, 1318, 59 L.Ed.2d

533 (1979) ("[A]n Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available.").

So the issue is squarely presented: would the application of the plain language of § 3565 create the significant risk of a serious constitutional question under the *Ex Post Facto* Clause? Our *ex post facto* jurisprudence has three bright-line rules:

> It is settled, by decisions of this court so well known that their citation may be dispensed with, that [1] any statute which punishes as a crime an act previously committed, which was innocent when done, [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

*Beazell v. Ohio*, 269 U.S. 167, 169, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925). In *Collins v. Youngblood*, 497 U.S. 37, 41–43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990), the Supreme Court wrote that the *Beazell* formulation "is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause". *Id.* In reaffirming its historical understanding of the Clause, the Court jettisoned the confusing distinctions that other cases had made between "substantive" and "procedural" protections. *Id.* at 45–47, 110 S.Ct. at 2721 ("[B]y simply labelling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the *Ex Post Facto* Clause. Subtle *ex post facto* violations are no more permissible than overt ones.") (citation omitted). In short, the Court rejected what it perceived as an "undefined enlargement" of the historical understanding of the Clause. *Id.*[6]

Thus, we must examine pre-SRA law to determine whether applying § 3565 to McGregor would impose on him one of the three burdens described above. The operative pre-SRA language permits—but does not require—the district court to "revoke the

---

5. There is no relevant legislative history to the 1988 amendment of § 3565. *See* 1988 U.S.S.C.A.N. 5937.

6. Our analysis of the *Collins* opinion is consistent with Third Circuit precedent. *See, e.g., Helton v. Fauver*, 930 F.2d 1040, 1045 (3d Cir.1991).

probation and require [the defendant] to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed." 18 U.S.C. § 3653 (1982) (repealed effective 1987). This provision gives the district court the discretion to revoke a defendant's probation and to resentence him. Unlike the pre-SRA regime, however, the operative language of § 3565 is not discretionary: a judge "shall" revoke probation and resentence a defendant if he is in possession of a controlled substance.

It appears to us that the Government's best *ex post facto* argument is that this removal of discretion excessively burdens McGregor's punishment: under the old regime a court "may" have revoked his probation for possession of controlled substances; under the new regime a court must do so.[7]

■ The second *ex post facto* component prohibits a statute that "makes more burdensome the punishment for a crime, after its commission". *Beazell, supra,* 269 U.S. at 169, 46 S.Ct. at 68. Here, the issue is whether § 3565's removal of the district court's discretion in revoking parole made McGregor's punishment more burdensome. The Supreme Court's decision in *Miller v. Florida,* 482 U.S. 423, 429–31, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), helps resolve this issue. In *Miller,* as in *Coleman,* the Court emphasized the historical policies of the recognized the historical policies of the *Ex Post Facto* Clause:

> [A]lmost from the outset, we have recognized that central to the *ex post facto* prohibition is a concern for the "lack of fair

notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated."

*Miller,* 482 U.S. at 430, 107 S.Ct. at 2451 (citation omitted). The Court then counseled that the *ex post facto* test "derives from these principles":

> [T]o fall within the *ex post facto* prohibition, two critical elements must be present: first, the law "must be retrospective, that is, it must apply to events occurring before its enactment"; and second, "it must disadvantage the offender affected by it."

*Id.* (citation omitted). The first prong, retrospective application, requires that the law "change[ ] the legal consequences of acts completed before its effective date" *Id.* (citation omitted). Here, we conclude that that prong is not met. We did not find McGregor to have possessed narcotics until his revocation hearing on August 17, 1994, long after the 1988 amendment took effect. Moreover, McGregor was not yet on probation when Congress passed the amendment; he was still in prison. Thus, as a prospective probationer on the date of enactment, he was on notice that possession of narcotics would result in a mandatory term of re-imprisonment.

The 1988 amendment is therefore not retrospective, even though the term of resentencing depends upon a pre-SRA sentence.[8]

We recognize the existence of contrary views on this issue. *See United States v. Meeks,* 25 F.3d 1117 (2d Cir.1994); *United States v. Paskow,* 11 F.3d 873 (9th Cir.1993);

---

7. The first and third *ex post facto* components do not apply to this case. Section 3565 is not a retroactive criminal statute. Nor does § 3565 deprive McGregor of a defense that would otherwise have been available to him. Black's Law Dictionary defines "defense" to be "[t]hat which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks." *Black's Law Dictionary* 419 (6th ed. 1990). It is true that McGregor would have been able to argue that his probation should not have been revoked under the pre-SRA regime, and that this argument is not available under § 3565. We decline to hold that the inability to present this argument constitutes remov-

al of a "defense," especially in the light of the second *ex post facto* component, which we discuss below.

8. Our conclusion today is consistent even with the pre-SRA law of probation. 18 U.S.C. § 3651 (1982 & Supp. IV 1986) (repealed effective 1987), which was the law when Judge Hannum sentenced McGregor, stated, "The court may revoke or modify any condition of probation, or may change the period of probation." McGregor was on notice, on the day of his sentencing, that his conditions of probation were subject to change, whether by judicial decision alone, or judicial decision based on congressional fiat.

*United States v. Parriett*, 974 F.2d 523 (4th Cir.1992); *United States v. Flora*, 810 F.Supp. 841 (W.D.Ky.1993). We cannot reconcile the holdings of these cases with the Supreme Court's decision in *Collins v. Youngblood, supra*, 497 U.S. at 38–41, 110 S.Ct. at 2717–18, where the Supreme Court allowed the retroactive application of a law to deprive a defendant of a right to a new trial.[9] Moreover, we chose to resentence McGregor above the one-third minimum of § 3565. We simply cannot point to any protection that McGregor lost, or any burden that he assumed, as a result of the application of § 3565 to him.

III. The Length of McGregor's Prison Term

 The Government also takes issue with the length of McGregor's sentence. Judge Hannum sentenced McGregor to one year of imprisonment on Count One, and three years of imprisonment on Count Three. These two sentences ran consecutively, and Judge Hannum suspended no part of them. On Count Four, the Court suspended the sentence and placed McGregor on probation for five years, to run consecutively with Counts One and Three and with any resulting parole. We agree with the Government that Count Four is the only count on which time remains. Count Four carries a maximum of one year imprisonment, and we shall modify our prior Order and reduce his two-year sentence to one year.

An appropriate Order follows.

## ORDER

AND NOW, this 19th day of October, 1994, upon consideration of the Government's motion for reconsideration, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. The Government's motion is GRANTED; and

2. Paragraph 2 of this Court's Order of August 19, 1994 is AMENDED to provide that the defendant is REMANDED to the custody of the Attorney General for a period of one year, to commence with his detention in this matter on August 17, 1994.

9. Under a Texas decision, a sentence that contained terms not authorized by the state penal code was void. *Collins*, 497 U.S. at 38–39, 110 S.Ct. at 2717 (citing *Bogany v. State*, 661 S.W.2d 957 (Tex.Crim.App.1983)). Youngblood received a fine and a prison term, but the state statute did not authorize a fine. *Id.* Before the Texas court considered Youngblood's habeas corpus petition, the state legislature superseded *Bogany*, and, relying on the new statute, the state court reformed Youngblood's sentence and eliminated the fine; the court refused Youngblood's demand for a new trial. *Id.* 497 U.S. at 39–41, 110 S.Ct. at 2718. The Supreme Court held that denial of a new trial did not violate the *Ex Post Facto* Clause. In *Collins*, as here, the retroactive application of a statute denied a defendant a protection to which he otherwise would have been entitled, and in the process stripped Youngblood of all the procedural protections that a new trial would have given him. In both cases, however, the change in law did not affect the significance of the underlying criminal acts upon which the conviction was based.