**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael REESE, Defendant–Appellant.**

**No. 92–4330.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1993.

Decided Dec. 14, 1995.

Joseph P. Schmitz, Asst. U.S. Atty. (argued and briefed), Cleveland, OH, for Plaintiff–Appellee.

Debra K. Migdal (argued and briefed), Federal Public Defender's Office, Cleveland, OH, for Defendant–Appellant.

Before: BOGGS and SUHRHEINRICH, Circuit Judges; and WEBER, District Judge.*

BOGGS, Circuit Judge.

Michael Reese pleaded guilty to conspiring to distribute cocaine, and was sentenced to a prison term, to be followed by five years of supervised release. Under the law that existed at the time Reese was sentenced, the district judge had discretion as to the amount of additional prison time to impose if Reese were to be found in possession of a controlled substance during the period of his supervised release, up to the total period of supervised release. That statute was changed after Reese was sentenced. Under the new law, judicial discretion was superseded by a mandatory minimum prison term of one-third of the term of supervised release for any person found in possession of a controlled substance during the period of his supervised release. 18 U.S.C. § 3583(g) (1988).

In time, Reese began his supervised release period, and then tested positive thirteen separate times for use of a controlled substance. As a result, the district judge revoked his supervised release and imposed on him the mandatory minimum prison term that the new law required. Reese believes that he might have received a shorter punishment for violating supervised release if the judge had been permitted to exercise discretion. Therefore, he appeals from that

*. The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

punishment, arguing that the Ex Post Facto Clause of the Constitution prevents application of the new law to him. We hold that the prison term required by the new statute was imposed for the new drug offense, not for the original crime. Thus, for the reasons set forth below, we reject Reese's constitutional claim and affirm the district court.

## I

Reese was convicted of violating 21 U.S.C. § 846 (1982), in that he participated in a conspiracy beginning as early as May 24, 1988, to distribute at least four ounces (about 113 grams) of cocaine. Section 846's maximum punishment at that time could not exceed that set forth for violations of the underlying statute. In his case, the statute underlying Section 846 was 21 U.S.C. § 841 (1982 & Supp. V 1988). Because Reese had conspired to distribute less than 500 grams of cocaine, he was sentenced under 21 U.S.C. § 841(b)(1)(C) (1982 & Supp. V 1988). Section 841(b)(1)(C) provided that a violation could be punished by up to twenty years in prison and at least three years of supervised release. On November 18, 1988, Reese was sentenced to 33 months of imprisonment and a five year term of supervised release. Under 18 U.S.C. § 3583 (Supp. V 1988), as it existed at the time Reese committed his offense, a violation of the terms of supervised release could result in its revocation and conversion into a prison term subject to certain constraints. Because Reese was convicted of a Class B felony (defined as a felony punished by twenty years or more of imprisonment), under 18 U.S.C. § 3559(a)(1)(B) (Supp. V 1988), a revoked term of supervised release could not be converted into a prison term of more than three years. 18 U.S.C. § 3583(e)(4) (Supp. V 1988). The judge revoking supervised release, however, was free to use his discretion under Section 3583 to substitute any term of imprisonment less than three years.

On December 31, 1988, a new statute, concerning criminals who violate the terms of their supervised release, became effective:

**Possession of controlled substances.**—If the defendant [while on supervised release, after serving his prison term] is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than *one-third of the term of supervised release.*

18 U.S.C. § 3583(g) (1988) (emphasis added).[1] Thus, for someone like Reese who was sentenced to five years of supervised release, the new law required the court to impose a minimum twenty-month prison term if, during the period of his supervised release, he was found to be in possession of a controlled substance. Prior to this law, a court was free to exercise its own discretion, subject to a statutory maximum and with the advice of the sentencing guidelines, when imposing punishment for a violation of supervised release.

Mr. Reese began his five-year supervised-release period on April 8, 1991, and was regularly tested for drugs. He tested positive for cocaine in October and November 1991, in December 1991, and six times in March 1992. His supervised release was not immediately revoked for these infractions, but he was ordered to participate in a residential drug-treatment program. Reese completed the program in July 1992, but in October 1992 he again tested positive four times for cocaine. Consequently, the court found that Reese had violated the terms of his release, and it imposed on him the statutory minimum term of twenty months of imprisonment. At that time, the statutory maximum the judge could have imposed was the full remaining term of supervised release, which was over 40 months.

Reese contends that, in the absence of the new statute that was enacted after he committed his crime, pleaded guilty, and was sentenced, he would have faced only three to nine months of imprisonment under USSG § 7B1.4(a) for drug possession while on su-

---

**1.** Anti–Drug Abuse Act of 1988, Pub.L. No. 100– 690, tit. VII, § 7303(b)(2), 102 Stat. 4181, 4464.

pervised release.[2] He therefore appeals from the application to him of Section 3583(g), claiming that it violates the Ex Post Facto Clause of the Constitution, "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.[3]

## II

At the time that the Constitution was drafted, ex post facto laws already had a long legal history. *See Calder v. Bull,* 3 U.S. (3 Dall.) 386, 389, 1 L.Ed. 648 (1798). The purpose of the ex post facto prohibition is "to assure that legislative Acts give *fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.*" *Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–65, 67 L.Ed.2d 17 (1981) (emphasis added) (citations omitted). To fall within the ex post facto prohibition, two elements must be present: (1) the law must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it. *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). In *Miller,* the defendant committed his crimes in April. Harsher state sentencing guidelines were enacted in June and became effective in July. The defendant was convicted in August and was sentenced in October under the new guidelines. The Court held that, because of the Ex Post Facto Clause, the defendant should have been sentenced under the prior guidelines that had been in effect when he had committed his April crimes. Moreover, even though the prior guidelines would have *allowed* the judge in his discretion to impose a prison term as great as that *required* by the

subsequent guidelines, the Court still saw an ex post facto problem because,

> [i]t is plainly to the substantial disadvantage of [the defendant] to be deprived of all opportunity to receive a [lighter] sentence. . . . [O]ne is not barred from challenging a change in the penal code on *ex post facto* grounds simply because the sentence he received under the new law was not more onerous than that which he *might* have received under the old.

482 U.S. at 432, 107 S.Ct. at 2452 (quoting *Dobbert v. Florida,* 432 U.S. 282, 300, 97 S.Ct. 2290, 2301–02, 53 L.Ed.2d 344 (1977) and *Lindsey v. Washington,* 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937) (emphasis added)).

*Miller* dealt with the direct application of harsher new sentencing guidelines to crimes that were committed before the guidelines' enactment. The government maintains that *Miller* is inapposite here because this case deals with violations that occurred *after* the penalty became effective. Thus, Reese had "fair warning" in December 1988 that he would face a statutory minimum of twenty months of imprisonment if found in possession of a controlled substance while on the supervised release that did not even begin until April 8, 1991. *See Miller,* 482 U.S. at 430, 107 S.Ct. at 2451.

The opposing parties in this case approach the constitutional question from two different perspectives. Reese sees a new statute that became effective six months after he committed his original crime of conspiring to distribute drugs. Therefore, since the new law could not be applied retroactively to punish that crime, it also should not be used to extend the punishment that has already been

**2.** Under USSG § 7B1.4(a), a 3-to-9-month prison range is provided for a defendant who had originally been sentenced based on criminal history category I and who commits a grade C violation while on supervised release. The three lettered grades of supervised-release violations are set forth in USSG § 7B1.1. Although Reese maintains that he merely committed a grade C violation of supervised release, rather than a more serious grade A violation, the record on this appeal does not reflect on the merits of that claim, and we express no opinion on that matter. In any event, all of USSG ch. 7, pt. A1, including

Section 7B1.1, consists only of policy statements, not binding guidelines. *See United States v. West,* 59 F.3d 32, 33 (6th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 486, 133 L.Ed.2d 413 (1995).

**3.** The record is silent as to what considerations underlay Reese's decision to plead guilty on August 30, 1988. Thus, it is not clear whether he considered the implications of subsequent recidivism, or whether he might have refrained from pleading guilty had 18 U.S.C. § 3583(g) (1988) been in effect at the time.

meted out for that crime. By contrast, the government sees a 1988 statute that was nearly four years old when Reese violated its terms and tested positive for cocaine in October 1991 and thereafter.

In *United States v. Flora*, 810 F.Supp. 841 (W.D.Ky.1993), this exact legal question was considered.[4] The district court articulated the dilemma:

It has been argued [by the Government] that the punishment imposed by the revocation of supervised release is triggered exclusively by the parolee's violation of release conditions, and that this new penalty is only tenuously related to the substantive crimes committed by the offender many years earlier.... The application of § 3583(g) ... would not be considered retrospective under this analysis....

It might instead be contended that supervised release and its attendant possibility of revocation are simply part of the whole matrix of punishment which arises out of a defendant's original crimes....

*Id.* at 842. That district court, citing persuasive authority in *United States v. Parriett*, 974 F.2d 523 (4th Cir.1992), concluded that the statute is an ex post facto law as applied to defendant because "the better interpretation" would regard imposition of the punishment of Section 3583(g) as retrospective since "supervised release, and the possibility of revocation and additional imprisonment, are as much the consequence of the offender's underlying crime as is the initial term of imprisonment." *Flora*, 810 F.Supp. at 843. Although *Parriett* addressed this exact issue, Fourth Circuit law does not control our analysis. Moreover, we note that the *Parriett* court expressed doubts about its own hold-

ing, but felt compelled to follow earlier precedent in the Fourth Circuit:

Clearly, the revision to the supervised release statute *most directly* altered the "legal consequences" of Parriett's [subsequent] drug possession [while on supervised release]. *Only in a more tenuous sense* can it be said that revision of the supervised release statute changed the legal consequences of Parriett's original crime.... *Nevertheless*, under the prior precedent of this circuit,[5] *we must hold* that the revision of the supervised release statute altered the legal consequences of Parriett's original crime....

*Parriett*, 974 F.2d at 526 (emphasis added).

Recently, the Ninth Circuit and the Second Circuit have come to agree with the *Parriett* court. In *United States v. Paskow*, 11 F.3d 873, 876 (9th Cir.1993), the court acknowledged that the government's position, adopted by the district court, "had great appeal intuitively." Nevertheless, the court imported a line of case law that addressed similar ex post facto questions that had arisen under the prior system of parole, and it held that, "[f]or the purposes of an ex post facto analysis, there is absolutely no difference between parole and supervised release.... Supervised release and parole are virtually identical systems." *Id.* at 878, 881. Consequently, "[r]evocation of parole is not a punishment for a new offense.... For revocation purposes, the conduct simply triggers the execution of the conditions of the original sentence." *Id.* at 881. *See also United States v. Meeks*, 25 F.3d 1117 (2d Cir.1994).

The government urges that the Sixth Circuit not follow *Parriett, Flora, Paskow* and

---

4. In *United States v. Wagner*, 999 F.2d 312 (8th Cir.1993), the Eighth Circuit faced a nearly identical factual situation, but the defendant in that case did not make an ex post facto challenge.

5. In *Fender v. Thompson*, 883 F.2d 303 (4th Cir.1989), an inmate had been convicted and sentenced to life imprisonment in 1973, with the possibility of parole in fifteen years. *See* Va. Code § 53-251(3) (1970). In 1985, a new Virginia statute provided that "[a]ny person sentenced to life imprisonment who escapes from a correctional facility ... shall not be eligible for parole."

Va.Code § 53.1-151(B) (1988). The inmate escaped and was recaptured in 1987. The Virginia Department of Corrections, basing its decision on the new 1985 law, ruled that the inmate would no longer be eligible for parole. However, the Fourth Circuit reversed that determination, ruling that the 1985 Virginia statute would not apply to the defendant, even though he had been "on notice" of the legal consequences that he would face if he attempted an escape, because it was an ex post facto law.

*Meeks.* Rather, the government compares the new statute to recidivist statutes. Many recidivist laws, in setting out standards for enhancing the sentences of repeat offenders, count as predicate crimes those perpetrated before the recidivist law's effective dates. For example, in *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), the Court upheld a life sentence for a four-time convict, even though the first of his four convictions predated the passage of the recidivist law. The Court saw no ex post facto problem:

> Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.

*Id.* at 732, 68 S.Ct. at 1258–59.

In *United States v. Ykema,* 887 F.2d 697 (6th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990), this court considered an appeal from a defendant who had been sentenced under federal sentencing guidelines that became effective in November 1987. He argued that his sentence had violated the Ex Post Facto Clause because his base offense level had been determined in part by activities that had taken place before November 1987. However, we held that:

> [A]n increase in sentence for a repeat offense does not violate the *ex post facto clause* simply because the first offense was committed before the passage of the repeat offender law. This supports the proposition that augmenting punishment for a later offense, based on acts committed before a law is passed, does not violate the *ex post facto clause.*
>
> .... Certain criminal acts committed by the appellant before the passage of an enhancement law were used to enhance the penalty for a crime occurring after the passage of the law. Such a rule is justified, as are repeat offender laws, because the heavier penalty for the offense is not an additional punishment for the earlier behavior but is a *statutorily authorized punishment for criminal conduct that has occurred after the passage of the law.*

*Id.* at 700 (citations omitted) (emphasis added). In *United States v. Ilacqua,* 562 F.2d 399 (6th Cir.1977), *cert. denied,* 435 U.S. 906, 917, 947, 98 S.Ct. 1453, 1473, 1532, 55 L.Ed.2d 497, 508, 545 (1978), we similarly cited the *Gryger* principle, noting that the Court had "disposed of the claim that a recidivist statute ... operated retroactively as an ex post facto law simply because the offenses giving rise to defendant's status as an habitual offender took place before the effective date of the recidivist statute." *Id.* at 404.

### III

■ Supervised release is a new form of post-imprisonment supervision that was created by the Sentencing Reform Act. It accompanied implementation of the Sentencing Guidelines. "Unlike parole, a term of supervised release does not replace a portion of the sentence of imprisonment, but rather is an order of supervision in addition to any term of imprisonment imposed by the court." USSG ch. 7, pt. A2(b). Thus, supervised release is a "method of post-incarceration supervision and [a] transformation of probation from a suspension of sentence to a sentence in itself...." *Id.* pt. A3(a). There is an inherent difference between probation and supervised release. When probation is revoked for a violation, the rules set forth in 18 U.S.C. § 3565 limit the term of resentencing to the term allowable under the original offense. Thus, if someone was sentenced to nine years in prison and was released on parole after three years, his subsequent violation of that probation could result in his reincarceration for up to six more years, but no more.

By contrast, a violation of supervised release may result in a cumulative punishment that exceeds the original prison sentence. 18 U.S.C. § 3583(e). *See also United States v. Smeathers,* 930 F.2d 18, 19 (8th Cir.1991); *United States v. Dillard,* 910 F.2d 461, 466–67 (7th Cir.1990). Under the new system of supervised release, it is possible that an individual will have already served the maximum prison sentence allowed under the guidelines before his supervised release even begins. Thereafter, a violation of that supervised release, even in the final days of the release period, could result in additional prison time. If it were otherwise, a person on supervised release could violate his release conditions with impunity if he had already served his full original sentence. "Connecting the re-sentencing period with the maximum period of incarceration allowed for the original offense would undermine the system of supervised release.... The possibility of reincarceration for violation of a condition of supervised release is a cornerstone of the sentencing structure." *United States v. Wright,* 2 F.3d 175, 179 (6th Cir.1993).

■ Because supervised release, unlike the previous parole system, is a form of punishment that is separate from the maximum incarceration period that attaches to the original offense, a violation of that supervised release also results in a separate punishment that does not implicate the Ex Post Facto Clause. Supervised release aims at preventing recidivism by imposing new and additional punishment on criminals who, having already served some or all of their guideline sentences for a predicate crime, revert to their former ways by committing a new precipitating offense, such as possessing drugs. "Thus, the length of supervised release term does not bear a direct relation to the initial sentence, nor to the maximum possible initial sentence, since the term of supervised release is to be tailored to the needs of individual defendants [for supervision after release from jail]." *Dillard,* 910 F.2d at 466. Therefore, Section 3583(g) is consistent with the recidivist laws that have been upheld by the Supreme Court in *Gryger* and by this court in *Ykema* and *Ilacqua.*

## IV

The tension and relation between a criminal's predicate crime (leading to the original sentence) and his later misconduct that precipitates imprisonment for violating supervised release is the heart of the close philosophical argument at issue here.

This case is one of a class of close cases involving the Ex Post Facto Clause.

— In each of these cases, a person commits an offense ("the predicate offense") at a time when that offense would not result in some later consequence.

— Next, the law is changed so that the predicate offense is made a condition precedent permitting some new or increased punishment *if* some later offense is committed.

— The person then commits the subsequent offense (usually called "the current offense"), is assessed the new or increased punishment, and claims an *ex post facto* violation.

As one court put it, we "must decide whether revocation should be considered the continuing 'legal consequence' of Defendant's original crimes, or [be] viewed instead as the independent 'legal consequence' of Defendant's later parole misconduct." *Flora,* 810 F.Supp. at 843.

As a matter of formal logic, the answer to this question has to be: "Both." If the predicate offense had not been committed, the later offense would not have resulted in such severe punishment. At the same time, if the current offense had not been committed, there would have been no new or additional punishment. So, the question remains how to resolve this dilemma arising from the three-step sequence: (1) predicate offense; (2) new punishment enacted for later offense; and (3) current offense and resulting enhanced punishment.

■ If the new disadvantage imposed by the legislation applies to everyone who has committed the predicate offense (e.g., taking away good time or increasing a sentence),

without regard to any subsequent offense, there is clearly an ex post facto violation, and this paradigm is not implicated. This is the situation that the Supreme Court found violated the Ex Post Facto Clause in both *Weaver* and *Miller*. On the other hand, where the new disadvantage imposed by the legislation has no effect unless a later offense is committed, we are faced with the dilemma in its full force.

The precedent on this issue seems somewhat incoherent. All laws that impose a greater punishment for an offense committed by a recidivist have this dual nature. *See Gryger, supra; Ykema, supra.* In those cases, the courts have uniformly held that the punishment is being imposed for the later offense, even though the punishment would not be so severe were it not for the earlier offense.

Similarly, in a series of recent cases concerning 8 U.S.C. § 1326, the courts have upheld against ex post facto challenges a punishment with the same dual nature. In, *e.g., United States v. Cole,* 32 F.3d 16 (2d Cir.), *cert. denied* — U.S. ——, 115 S.Ct. 497, 130 L.Ed.2d 407 (1994), *United States v. Forbes,* 16 F.3d 1294 (1st Cir.1994), *United States v. Arzate–Nunez,* 18 F.3d 730 (9th Cir.1994), and *United States v. Saenz–Forero,* 27 F.3d 1016 (5th Cir.1994) the courts faced the following situation: An alien committed an offense and was deported. Subsequent to that deportation, Congress enacted 8 U.S.C. § 1326(b)(2), which imposed a greatly enhanced punishment for any alien who had committed an "aggravated felony," and who then illegally entered or who was found in the country subsequent to its effective date. The alien then re-entered or was found in the United States and was assessed a harsher punishment under Section 1326. Again, logically, this punishment can be viewed as a greater punishment for the earlier offense (had the earlier offense not been committed, a large part of the new punishment could not be imposed), or it can be viewed as a punishment for the later offense (if the later conduct had not occurred, there would be no additional punishment). In each

of these cases, the courts had no difficulty in sustaining the law against an ex post facto challenge, because the punishment simply was not "for the earlier offense" even though the punishment was a "but for" consequence of that earlier offense.

The Section 3583 cases cited above (*Parriett, Meeks, Paskow,* and *Flora* ) are simply in tension with this line of cases, as well as earlier decisions by two of those circuits (*United States v. Bermudez,* 974 F.2d 12, 13–14 (2d Cir.1992) (per curiam), and *United States v. Schram,* 9 F.3d 741, 742–43 (9th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993)), and a recent district court case, *United States v. McGregor,* 866 F.Supp. 215 (E.D.Pa.1994), which recognized that those cases conflict with the Supreme Court precedent discussed above. *Id.* at 219.

The only attempt at harmonization or distinction of these cases came in the Ninth Circuit cases of *Arzate–Nunez,* 18 F.3d at 735, and *United States v. Soto–Olivas,* 44 F.3d 788, 791 & n. 1 (9th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 2289, 132 L.Ed.2d 290 (1995), and to a lesser extent in *Meeks,* 25 F.3d at 1122. These cases focus on the distinction that a wholly new crime requires the full panoply of constitutional protections, such as a right to jury trial and a finding of guilt beyond a reasonable doubt. Thus, these cases apparently argue that such a new punishment with those safeguards would not be ex post facto, but an identical punishment imposed pursuant to the lesser protections attendant to a supervised release revocation hearing would be ex post facto.

■ We do not believe this distinction will survive analysis. No previous ex post facto cases have focused on the nature of the procedural protections afforded in hearings or trials on subsequent violations. Thus, a new administrative provision that would impose an administrative punishment for actions that were not punishable at the time they were taken would similarly violate the Ex Post Facto Clause. *See United States ex rel. Forman v. McCall,* 709 F.2d 852, 859 (3d

Cir.1983) (federal parole guidelines were laws for the purposes of Ex Post Facto Clause analysis). And, to the contrary, where there are relaxed procedural protections, as with punishment for prison violations, the cases do not find an ex post facto violation for prison regulations enacted after the crime for which a person is sentenced has been committed. *See Gilbert v. Peters,* 55 F.3d 237, 239 (7th Cir.1995) (Illinois statute requiring incarcerated sex offenders to submit blood samples before final discharge, parole or release not violative of Ex Post Facto Clause); *Ewell v. Murray,* 11 F.3d 482, 485 (4th Cir.1993) (Virginia statute reducing good time credits of inmates who refuse to give blood samples not violative of Ex Post Facto Clause), *cert. denied,* —— U.S. ——, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994). If relaxed standards for punishment by revoking parole could only be justified by being subsumed under the rubric of the original sentence, it would never be possible to impose prison misconduct punishments (which, pursuant to *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), require only rudimentary protections) on prisoners violating rules enacted after the beginning of their sentences, even where they had full notice of proscribed behavior. No case so holds.

On balance, we believe that the key considerations for Ex Post Facto Clause purposes are those set out by the Supreme Court in *Weaver* and in *Miller:* Is there fair notice, and is the punishment for the *original* conduct being imposed or increased? *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451; *Weaver,* 450 U.S. at 28–29, 31, 101 S.Ct. at 963–65, 965–66. *See Collins,* 497 U.S. at 42, 110 S.Ct. at 2719. When couched in those terms, it is much clearer that there is no ex post facto violation here. A person on supervised release, situated identically to Reese, who did not repeatedly test positive for drugs would have suffered no ill consequences from the passage of the new law in Section 3585(g). When the punishment at issue here does not reach an identically situated prisoner who committed the same earlier conduct, it can hardly be logically argued that the punishment is being imposed "because of" the earlier conduct. Similarly, the strongest and clearest Supreme Court statements all involve increases in punishment that apply to all prisoners, regardless of later conduct.

Perhaps the best case to support Reese's argument, though not cited in his brief, is *Scafati v. Greenfield,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), *aff'g without op.,* 277 F.Supp. 644 (D.Mass.1967), (3–judge court), where the Supreme Court affirmed without opinion a district court decision holding unconstitutional a Massachusetts law that changed the rule for computation of good time credits for prisoners after revocation of parole. The Supreme Court issued no opinion, so the rationale behind the decision is unknown. However, this decision is consistent with *Weaver*'s holding that good time credit rules that were generally applicable at the time of the crime cannot be changed as applied to persons who are serving a sentence *for that crime.*

However, here, under our holding, we believe Reese is merely being required to serve time not for the original crime, but for the violation of supervised release. As the court in *Parriett* said, the relation of Wolfe's new punishment to the earlier crime is much more tenuous than to the later violation. 974 F.2d at 526. Nor is Reese in the situation of Greenfield, whose original sentence was being computed differently, even while he was serving that sentence, just as another prisoner sentenced the same day as Greenfield might be serving his.

Here, when Reese was returned to prison it was to serve time for the violation of supervised release, not for the original offense. The new law did not constitute Congress's adding more time to the sentence for the original offense of conspiring to distribute cocaine.

### V

All of the Supreme Court's most recent and extensive pronouncements on the Ex Post Facto Clause are consistent with this conclusion. In *California Dep't of Corrections v. Morales,* —— U.S. ——, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), the Court em-

phasized that, "after *Collins* [*v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) ], the focus of the *ex post facto* inquiry is ... on whether any such change ... increases the penalty by which a crime is punishable." *Morales,* —— U.S. at —— n. 3, 115 S.Ct. at 1602 n. 3. It noted that it disagreed with the contention that any risk of enhanced confinement associated with an original offense was barred, stating "[o]ur cases have never accepted this expansive view of the *Ex Post Facto* Clause and we will not endorse it here." *Id.* at ——, 115 S.Ct. at 1602. In *Collins,* the Court had pointed to the long line of cases, including *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), as being "faithful to our best knowledge of the original understanding of the Ex Post Facto Clause: legislatures may not retroactively ... increase the punishment for criminal acts." *Collins,* 497 U.S. at 43, 110 S.Ct. at 2719–20. As noted previously, *Miller v. Florida* emphasized that a crucial part of ex post facto jurisprudence was whether a person was being given "fair warning of [the] effect [of legislative enactments]" and could "rely on their meaning until explicitly changed." *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451. The Court there noted that "fair warning" was not provided simply by a notice that the law imposing the *original sentence,* "was subject to revision. The Constitutional provision against ex post facto laws cannot be avoided merely by adding to a law a notice that it might be changed." *Id.* at 431, 107 S.Ct. at 2451–52.

However, in *Weaver,* perhaps the Court's most significant recent ex post facto case, and one that specifically involved a change in "good time" rules after the original sentence, the Court repeatedly emphasized the importance of the connection of the forbidden increase in punishment with the original offense. It stated that "the ex post facto prohibition ... forbids the imposition of punishment more severe than the punishment assigned by law when *the act to be punished* occurred." *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965 (emphasis added). It notes that one of the two critical elements that causes a law

to become ex post facto is that "it must apply to events occurring before its enactment." *Id.* at 29, 101 S.Ct. at 964–65. Finally, the Court summarized the inquiry the Ex Post Facto Clause requires by stating "the critical question is whether the law changes the legal consequences of acts completed before its effective date." *Id.* at 31, 101 S.Ct. at 965–66.

When weighing that precise question, in light of the Court's recent course of jurisprudence, we are compelled to hold that Section 3583(g) does not change the legal consequences of the original act by Reese of cocaine distribution. A prisoner sentenced for the same crime on the same day as Reese, who was released on supervised release the same day as Reese, would suffer no additional "legal consequences" as a result of the enactment of Section 3583(g), so long as he did not violate the terms of his supervised release. The legal consequences Reese suffered were different, strictly because of acts that he committed long after the enactment of Section 3583(g) and, given the number of times that Reese was warned, that he undoubtedly committed with actual knowledge he was violating the statute.

## VI

For the foregoing reasons, we hold that 18 U.S.C. § 3583(g), as applied to Reese's continued and repeated violations of his supervised release, is not an ex post facto law. Therefore, the sentence of the district court is **AFFIRMED**.