UNITED STATES of America, Plaintiff,

v.

Anthony GAINES, et al., Defendants.

No. 91 CR 639.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 12, 1996.

Philip A. Guentert, Asst. U.S. Attorney, for Plaintiff.

James Marcus, Williams & Marcus, Chicago, IL, for Defendants.

*MEMORANDUM OPINION*
*AND ORDER*

SHADUR, Senior District Judge.

Anthony Gaines ("Gaines") has been serving a term of supervised release after the completion of his prison sentence, which was originally imposed after his guilty plea to a conspiracy charge involving a substantial number of sales of LSD. Despite the multiple favorable breaks that Gaines has received in connection with that underlying charge,[1] Gaines has obviously not learned that "crime does not pay": During the early portion of his post-custodial period of supervised release (which was originally set at, and has not been changed from, a five-year term) he has committed a number of violations of its conditions, which are sufficiently serious to require the imposition of another period in prison in response to the government's current motion to revoke Gaines' supervised release.

That situation has brought Gaines before this Court once again, triggering an evidentiary hearing as to his violations of the terms of supervised release. After the early phases of that hearing had disclosed some truly troublesome conduct on Gaines' part, he and his counsel have elected—instead of proceeding to the conclusion of the evidentiary hearing—to arrive at stipulations with AUSA Guentert that, if accepted, would call for the imposition of a custodial period of some 12 months. This Court is being asked to consider the appropriate ruling on the government's motion to revoke supervised release today.

This situation poses a dilemma that has been familiar to both the federal courts and the Congress: If a violation of the conditions of supervised release that could call for the revocation of that status cannot legally be coupled with the reinstitution of a supervised release condition, the criminal justice system may face a Hobson's choice—either give the offender a pass for those violations, thus permitting a scofflaw to go entirely unpunished for such violative conduct, or give up the remaining hold that the system has over the offender (in this instance, Gaines' present period of supervised release is for a term ending February 3, 2000), thus in a sense rewarding the offender for his or her violations and (even more importantly in the societal sense) placing the citizenry at greater risk from a demonstrated law violator during the cancelled remainder of what had been the term of supervised release.

As initially enacted, 18 U.S.C. § 3583(e)(3) [2]—which first addressed the subject of revocation of supervised release—did not speak in so many words to the possible reinstitution of a supervised release term in conjunction with such revocation. That led to a divergence of views among the Circuits, the majority of them answering that question in the negative.

As this opinion will reflect, (1) the view of the Sentencing Commission from the beginning was that the minority view and not that of the majority accurately reflected Congress' original intent in having enacted Section 3583(c)(3) and (2) in response to a request that had originated with the Sentencing Commission, Congress has so provided

---

1. Gaines' original plea agreement called for a downward departure from the applicable sentencing guidelines ("Guidelines") range and the applicable statutory minimum sentence to a prison term of 75% of the low end of the applicable Guidelines range (but not to exceed 176 months), based on his substantial cooperation with the government that assisted it in other prosecutions. That formulation resulted in a 91–month sentence under the then-applicable Guideline relating to LSD offenses. When on November 1, 1993 the Sentencing Commission adopted a retroactive amendment to the Guideline more favorable to defendants, this Court promptly issued a directive to Gaines' counsel and Assistant United States Attorney Philip Guentert to submit the appropriate recalculations in that respect (even though only Gaines' codefendant Timothy Dal-

masso, and not Gaines himself, had requested such relief). And on December 8, 1993 this Court modified Gaines' sentence in accordance with the new Guideline by reducing the custodial portion to 39 months, stating in part (Memorandum Order at 6 n. 4):

Gaines should be forewarned that the reduction ordered here gives him a real break. If he were to violate the conditions of supervised release, this Court or any other judge hearing his case would surely take that into account in fashioning an appropriately stern response.

2. Further citations to portions of 18 U.S.C. § 3583 will simply take the form "Section 3583—."

by enacting Section 3583(h)—a provision that took effect September 13, 1994. This opinion addresses, as a matter of first impression in terms of any extensive exposition so far as this Court is aware, the potential constitutional problem that is posed by seeking to apply Section 3583(h) to a criminal defendant whose underlying criminal conduct had predated that September 1994 enactment date but whose supervised-release-violative conduct had occurred after that date.

There is no doubt that if Section 3583(h) may constitutionally be applied in his case, it expressly authorizes this Court to reimpose on Gaines a term of supervised release in addition to the new period of incarceration. Here is the statutory language:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

Where the parties part company is on the question whether invoking Section 3583(h) against Gaines, whose underlying LSD offense (and indeed his conviction and sentence for that offense) had antedated the statute's enactment, runs afoul of the Ex Post Facto Clause. As already indicated, before Section 3583(h) was adopted the view that had been embraced by the majority of the Courts of Appeals (including our own, *United States v. McGee,* 981 F.2d 271, 273–76 (7th Cir.1992)) was that Section 3583(e)(3) did not allow a district court that revoked a defendant's su-

pervised release to reimpose a term of supervised release in addition to a period of incarceration.[3] In a nutshell, Gaines contends that the Ex Post Facto Clause compels this Court to apply the law that was in place at the time of his original criminal violation, without taking account of later-enacted modifications.

In support of his position Gaines leans heavily on two judicial rulings that have dealt with similar constitutional challenges to a statute addressing another aspect of supervised release, Section 3583(g):[4]

> If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release.

In that respect three cases that have reached the federal appellate level have considered defendants whose original underlying offenses had preceded the enactment of Section 3583(g) but who were later (after that enactment) found to be in possession of drugs in violation of Section 3583(g), and who claimed that such assertedly "retroactive" application of that statute violated the Ex Post Facto Clause. Two cases have bought that argument (*United States v. Paskow,* 11 F.3d 873 (9th Cir.1993) and *United States v. Meeks,* 25 F.3d 1117 (2d Cir.1994)), on the theory that the application of Section 3583(g) to such defendants would adversely affect the defendants' ultimate release dates well after their commission of the offenses that originally put them in prison. *United States v. Reese,* 71 F.3d 582 (6th Cir.1995) has reached a contrary result, holding that what triggers the ex post facto analysis instead is the conduct that violates the terms of the supervised release—conduct that the *Reese* defendant (like the *Paskow* and *Meeks* defendants) had engaged in well after he was presumed to have known that Section 3583(g) was already

---

**3.** Only the First and Eighth Circuits had read Section 3583(e)(3) as allowing district courts the flexibility to reimpose supervised release (see, e.g., *United States v. O'Neil,* 11 F.3d 292, 293–301 (1st Cir.1993); *United States v. Stewart,* 7 F.3d 1350, 1351–53 (8th Cir.1993)).

**4.** What follows in the text is the original version of Section 3583(g) that took effect on December 31, 1988. Although the section has since been amended significantly by the Violent Crime Control and Law Enforcement Act of 1994, the quoted version is the one that has been addressed by the judicial decisions dealt with in the ensuing text discussion.

in place and had spelled out the custodial consequences of such a violation.

Both the *Paskow–Meeks* pairing and the *Reese* opinion advance strong legal arguments for the conflicting conclusions that they reach. But this Court need not choose between them for present purposes, because Section 3583(h) differs from Section 3583(g) in a critical way: While Section 3583(g) plainly marked a substantive change in the law, thus forcing a decision as to whether it was the original underlying criminal conduct or the later supervised-release-violative conduct that should control for ex post facto purposes, the enactment of Section 3583(h) was very different indeed—it was really nothing more than a declaration by Congress of the always-intended meaning of the statute (Section 3583(e)(3)) that was in place well before any conduct by Gaines that could have relevance here, either his underlying LSD offense or his recent supervised release violations or both.

That merely declaratory nature of Section 3583(h) is clear from its legislative history. Language that was in all material respects identical to Section 3583(h) was first proposed in the Senate in 1990 (S. 3180, 101st Cong., 2d Sess. § 3 (1990)).[5] Senator Thurmond's introductory remarks made clear that the Sentencing Commission had asked for the amendment to Section 3583 to clarify what was viewed as an unintended judicial misreading of the statute, thus bringing the courts' interpretation into line with congressional intent (136 Cong.Rec. S14,891–02, § 14,892–93 (1990) (emphasis added)):

> Mr. President, today I rise to introduce legislation which will implement various *technical and clarifying proposals* related to the revocation of supervised release and probation.... These proposals were suggested to me by the U.S. Sentencing Commission with the desire that they might be promptly enacted *so that the supervised release component of sentences will function as Congress intended.*

5. Indeed, the only difference between Section 3583(h) and its first incarnation as S. 3180 in 1990 is a purely grammatical (and nonsubstantive) language change that originally appeared in

Included in the Congressional Record at Senator Thurmond's request was correspondence from Sentencing Commission Chairman (and Judge of the Court of Appeals for the Fourth Circuit) William Wilkins that detailed the need for the proposed amendment to Section 3583. Judge Wilkins urged (*id.* at S14,893) that the Ninth Circuit's then-recent decision in *United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990)—a decision that was later echoed by the majority of other Courts of Appeals—had incorrectly rejected a flexible construction of Section 3583(e)(3), so that the Sentencing Commission was calling for an amendment to "better reflect congressional intent."

Though no such enactment ensued during 1990, in the following year Senator Thurmond voiced the same arguments (137 Cong. Rec. 57,769–01, 57,771–72 (1991)) in proposing, as Section 3 of S. 188, 102d Cong., 1st Sess. (1991), the type of provision (see n. 5) that has now become Section 3583(h). Again no enactment took place, and when language identical to the now-existing Section 3583(h) was introduced in 1993 as S. 468, 103d Cong., 1st Sess. § 3 (1993), Senator Thurmond once again made clear the purpose of the amendment (139 Cong.Rec. 52,090–02, 52,150–51 (1993)):

> This provision clarifies various conflicting appellate decisions, most of which have held that current law precluded an additional period of supervised release upon revocation and reimprisonment. The provision would ensure that courts have flexibility to both revoke supervised release upon a violation and, within limits, reimpose a period of supervised release after any necessary reimprisonment.... To the extent that current law is being interpreted by the courts, to preclude reimposing supervised release following revocation, offenders may be less likely to comply with supervision requirements. They may willingly risk a short period of reimprisonment that, upon completion, will end criminal justice control, rather than comply with conditions in supervised release

the 1993 version of the bill and was then included in the version ultimately enacted as Section 3583(h).

for a longer period of time. Indeed, under prevailing court interpretations of current law, those offenders most [in] need of supervision prison—those that have been reimprisoned for violating their original term of supervised release—are not subject to a transition period of supervision following their reimprisonment.

No further legislative comment has been found by this Court in conjunction with the ultimate enactment of Section 3583(h) as part of the Violent Crime Control and Law Enforcement Act of 1994 (Pub.L. No. 103–322, 108 Stat. 1831, 2016 (1994)), one of the few provisions of that statute that were adopted without further comment.[6]

What has just been adduced by way of legislative history of amendatory Section 3583(h) may properly be used "to illuminate the meaning of the original statute" (*In re Tarnow,* 749 F.2d 464, 467 (7th Cir.1984)). Here it is plain that from the very outset, when the Sentencing Commission first raised the issue in its communication to Congress, Section 3583(h) was meant as nothing more than a congressional declaration that initially one federal appellate court, and later the majority of such courts that had considered the matter, had misread the original intent of Section 3583(e)(3). Indeed, this is the conclusion that has been reached by the only court that has faced the issue in a published opinion.[7] Without any elaboration or any citations to the legislative sources referred to in this opinion, *United States v. Hartman,* 57 F.3d 670, 671 (8th Cir.1995) (per curiam) has said succinctly:

> Our reading of the legislative history of § 3583(h) persuades us that the new legislation was intended to confirm our interpretation of prior law.

Because Section 3583(h) is thus only expository of Congress' original intent in having enacted Section 3583(e)(3), a statute that was

in place well before Gaines' original LSD offense, he cannot rely on the September 13, 1994 enactment date of Section 3583(h) as the springboard for his ex post facto argument. This Court therefore need not rely on the powerful arguments that have been adduced in *Reese* for looking to the date of the supervised-release-violative conduct (which in Gaines' case took place after that statutory enactment date) rather than the date of the original underlying criminal conduct (which in Gaines' case preceded that statutory enactment date) in undertaking an ex post facto analysis. *Reese* would of course necessarily defeat Gaines' ex post facto argument, but his argument also fails on the different ground described here in any event.

### Conclusion

This Court holds that Section 3583(h) and its application to Gaines are invulnerable to challenge under the Ex Post Facto Clause. Accordingly the revocation of his term of supervised release that this Court is ordering today will carry with it not only Gaines' required service of a term of imprisonment but also the requirement, as authorized by Section 3583(h), that he be placed on the still-available term of supervised release after such imprisonment.

---

**6.** Though numerous other provisions of the 1994 legislation were highly controversial and occupied a good deal of space in committee reports and the Congressional Record, the purpose of the provision now at issue was already well established by its prior track record.

**7.** *United States v. Sandoval,* 1995 WL 656488 (1st Cir. Nov. 7) has reached the same conclusion in an unpublished per curiam decision. Because

this Court is of course aware of and honors the First Circuit's prohibition against reliance on such unpublished opinions, and incidentally because *Sandoval* viewed Section 3583(h) as just a statutory confirmation of the same court's reading of Section 3583(e)(3) in its earlier *O'Neil* decision (see n. 3), this opinion ascribes no weight to *Sandoval.*